# CARTER LEDYARD & MILBURN LLP  MEMO ENDORSED
*Counselors at Law*

Mark R. Zancolli
Partner

Direct Dial: (212) 238-8873
E-mail: zancolli@clm.com

2 Wall Street
New York, NY 10005-2072

Tel (212) 732-3200
Fax (212) 732-3232

570 Lexington Avenue
New York, NY 10022-6856
(212) 371-2720

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-14-15

September 3, 2015

VIA ECF
Honorable P. Kevin Castel
United States District Judge
United States Courthouse
500 Pearl Street
New York, New York 10007

Re: *Osuagwu v. Gila Regional Medical Center, et al.*
(Case No. 15-cv-05152-PKC)

Dear Judge Castel:

> Plaintiff is directed to respond to the pre-motion letter filed September 8 (Doc 14) by September 18 stating unconditionally and unambiguously whether plaintiff wishes to amend the complaint in response to the grounds asserted in the letter.
>
> SO ORDERED
> [signature] USDJ
> 9-11-15

This firm represents Defendant Gila Regional Medical Center ("GRMC") in the above-referenced action. On behalf of GRMC, we are writing this pre-motion letter to request leave to file a motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Complaint [Doc. No. 1], of Plaintiff Chinonyerem Osuagwu, M.D. ("Dr. Osuagwu").[1] As explained herein, Dr. Osuagwu's claims are barred by a settlement agreement and general release of GRMC that he signed in February 2014 in connection with prior litigation between the parties, and the Complaint otherwise fails to state a claim.

## I. BACKGROUND

GRMC is a county-owned and operated community hospital in Silver City, New Mexico. Compl., ¶ 4. Dr. Osuagwu entered into a Recruitment Agreement with GRMC dated February 15, 2008 (the "Recruitment Agreement"), pursuant to which Dr. Osuagwu agreed to engage in the full-time private practice of obstetrics and gynecology in the Geographic Area (as defined in the Recruitment Agreement) served by GRMC. Compl., ¶ 8. Pursuant to the Recruitment Agreement, GRMC agreed to subsidize Dr. Osuagwu's income from his practice of medicine in the Geographic Area for up to two years and to subsidize certain relocation expenses (the "Subsidy Amounts"). Compl., ¶ 9; Recruitment Agreement, § 3.1, 3.4.1–2.[2] Notably, the

---

[1] Pursuant to Section 2(A)(1) of the Court's Individual Practices, "[t]he transmittal of a pre-motion letter for a proposed motion under Rule 12(b), Fed. R. Civ. P. stays the time to answer or move until further order of the Court."

[2] In deciding a Rule 12(b)(6) motion, the Court may consider, among other things, "facts alleged in the complaint and documents attached to it or incorporated in it by reference." In re Merrill Lynch & Co., Inc., 273 F. Supp. 2d 351, 356 (S.D.N.Y. 2003).

7676798.7

Case 1:15-cv-05152-PKC   Document 15   Filed 09/14/15   Page 2 of 5
Case 1:15-cv-05152-PKC   Document 14   Filed 09/08/15   Page 2 of 5

Honorable P. Kevin Castel                                                              -2-

Recruitment Agreement contains provisions requiring Dr. Osuagwu to repay GRMC the Subsidy Amounts (Recruitment Agreement, § 3.5.1), and it also provides that repayment of such amounts would be forgiven, on a graduated scale, if Dr. Osuagwu continued to render the above-mentioned medical services in the Geographic Area (Compl., ¶ 10; Recruitment Agreement, §§ 3.5.2 and 3.5.3).

Dr. Osuagwu did not repay GRMC the Subsidy Amounts that he received from GRMC. As a result, on or about February 1, 2010, GRMC commenced a lawsuit in New Mexico state court, alleging breach of contract as a result of Dr. Osuagwu's failure to comply with his repayment obligations under the Recruitment Agreement (the "NM State Court Lawsuit"). Compl., ¶ 11. Thereafter, on or about January 3, 2011, Dr. Osuagwu commenced a lawsuit against GRMC in the U.S. District Court, District of New Mexico, alleging violations of his rights under the 14th Amendment of the U.S. Constitution (the "NM Federal Court Lawsuit"; together with the NM State Court Lawsuit, the "Lawsuits"). Compl., ¶ 12.

Because Dr. Osuagwu failed to repay the Subsidy Amounts that he received from GRMC plus interest as required under the Recruitment Agreement, GRMC's accounting department treated such unpaid amounts as cancellation of debt income to Dr. Osuagwu and filed Forms 1099 with the Internal Revenue Service (the "IRS") to report such amounts. In that regard, GRMC filed with respect to Dr. Osuagwu: (1) a 2011 Form 1099 in the amount of $52,754 on or about January 31, 2012; (2) a 2012 Form 1099 in the amount of $39,422 on or about January 31, 2013; and (3) a 2013 Form 1099 in the amount of $19,711 on or about January 31, 2014. Compl., ¶¶ 15-17.

On February 7, 2014, Dr. Osuagwu and GRMC entered into a Mutual Release and Confidential Settlement Agreement (the "Settlement Agreement"). Compl., ¶ 14. The Settlement Agreement settled the Lawsuits (Compl., ¶ 14) and contains mutual general releases, including a general release of GRMC by Dr. Osuagwu (Compl., ¶ 27).

## II.  DR. OSUAGWU'S CLAIMS ARE BARRED BY THE SETTLEMENT AGREEMENT AND THE GENERAL RELEASE THEREIN

"[A] valid release which is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced as a private agreement of the parties." Nasik Breeding & Research Farm Ltd. v. Merck & Co., 165 F. Supp. 2d 514, 526 (S.D.N.Y. 2001) (citation omitted). "Such a release will be binding on the parties absent a showing of fraud, duress, undue influence, or other valid defense." Id. (citation omitted).

The Complaint fails to allege any grounds for avoiding the application of the Settlement Agreement, and Dr. Osuagwu's general release of GRMC therein, to this action. The Complaint's allegation that "Plaintiff would not have agreed to the General Release contained in the Settlement Agreement had Plaintiff known of Defendants filing of the false and inaccurate Form 1099s with the IRS" (Compl., ¶ 27) is directly refuted by express language in the Settlement Agreement, including but not limited to that its purpose is "to terminate all controversy and claims among the Parties of whatsoever nature, known or unknown . . . ." Settlement Agreement, § IV (emphasis added). Accordingly, the Complaint should be dismissed

Case 1:15-cv-05152-PKC Document 15 Filed 09/14/15 Page 3 of 5
Case 1:15-cv-05152-PKC Document 14 Filed 09/08/15 Page 3 of 5

Honorable P. Kevin Castel                                                              -3-

because Dr. Osuagwu's claims are barred by the Settlement Agreement and Dr. Osuagwu's general release of GRMC.[3]

### III. THE COMPLAINT FAILS TO STATE A CLAIM

#### A. The Complaint Fails To State A Claim For Fraudulent Filing Of An Information Return Under 26 U.S.C. § 7434 (Counts I, II and III)

26 U.S.C. § 7434(a) provides that "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." In this context, willfulness "connotes a voluntary, intentional violation of a legal duty" and "attempting to deceive the IRS by filing [a] 1099 without believing that it was true." See Shiner v. Turnoy, 29 F. Supp. 3d. 1156, 1162 (N.D.Ill. 2014). Here, because Dr. Osuagwu failed to repay GRMC the Subsidy Amounts that he received from GRMC as he was required to do under the Recruitment Agreement, GRMC had a good faith basis for believing that it was properly reporting cancellation of debt income received by Dr. Osuagwu when it filed the 2011, 2012 and 2013 Form 1099s with the IRS.[4] Accordingly, GRMC's filing of those information returns was not willfully fraudulent within the meaning of 26 U.S.C. § 7434(a).

In addition, it has been held that the types of false "information returns" for which injured tax payers may recover "are limited to the nine listed in 26 U.S.C. § 6724(d)(1)(A)" and that "[t]hose nine do not include returns relating to the cancellation of indebtedness . . . ." Cavoto v. Hayes, 634 F.3d 921, 924 (7th Cir. 2011). As such, because the Form 1099s that are the subject of Dr. Osuagwu's claims relate to the cancellation of indebtedness, Dr. Osuagwu cannot maintain a claim against GRMC based on those Form 1099s. See Cavoto, 634 F.3d at 924 (ruling that plaintiff's suit under 26 U.S.C. § 7434(a) claiming that defendant had willfully filed a fraudulent information return should have been dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim where the information return in question related to the cancellation of indebtedness).

---

[3] Dr. Osuagwu alleges that "[a]s of the date of the signing and execution of the Settlement Agreement, GRMC and its agents and representatives deliberately and fraudulently withheld from Plaintiff information about the filing of the false and fraudulent Form 1099s to induce him to sign the Agreement." (Compl., ¶24). However, GRMC sent a copy of each of the Form 1099s to Dr. Osuagwu at his last known address in Silver City, New Mexico at or around the time they were filed. To avoid a release based on fraudulent concealment, a party must establish the elements of fraud: "(1) the other party wrongfully misrepresented or concealed a material fact; (2) the misrepresentation was false and known to be false when made, or the concealment was intentional; (3) the misrepresentation was made, or the concealment was done, with the intent of inducing reliance; (4) the plaintiff did in fact rely and was reasonable in doing so." Skylon Corp. v. Guilford Mills, Inc., 864 F. Supp. 353, 358 (S.D.N.Y. 1994) (citation omitted). The Complaint fails to allege fraud as a basis for avoiding the application of the Settlement Agreement and general release.

[4] In or about mid-2014, GRMC determined that because it had been pursuing repayment of the Subsidy Amounts from Dr. Osuagwu in the NM State Court Lawsuit, GRMC had not yet written off repayment of that debt from Dr. Osuagwu when the Form 1099s were filed. Accordingly, on or about August 15, 2014, GRMC filed corrected Form 1099s with the IRS for 2011, 2012 and 2013 with respect to Dr. Osuagwu.

Case 1:15-cv-05152-PKC Document 15 Filed 09/14/15 Page 4 of 5
Case 1:15-cv-05152-PKC Document 14 Filed 09/08/15 Page 4 of 5

Honorable P. Kevin Castel                                                -4-

### B. The Complaint Fails To State A Claim For Injurious Falsehood (Counts IV, V and VI)

The Complaint fails to allege the elements of an injurious falsehood claim, which are: "(1) falsity of the alleged statements; (2) publication to a third person; (3) malice; and (4) special damages." Korova Milk Bar of White Plains, Inc. v. PRE Properties, LLC, No. 11 Civ. 3227 (ER), 2013 WL 417406, at *16 (S.D.N.Y. Feb. 4, 2013). "[A]n injurious falsehood is confined to denigrating the quality of the plaintiff's business's goods or services." Id. Here, the allegedly fraudulent Form 1099s that are the subject of Dr. Osuagwu's injurious falsehood claims do not relate to the quality of any goods or services provided by Dr. Osuagwu. Further, the Complaint does not allege special damages with the requisite specificity to proceed on an injurious falsehood claim, as it merely alleges without any itemization that the filing of the Form 1099s "increas[ed] Plaintiff's liability to the IRS and New York State tax authorities" and that "Plaintiff suffered damages, including significant attorneys' fees" (Compl., ¶¶ 41, 47, 50, 55, 58 and 63). See id. at *17 (ruling that plaintiff's allegations that defendants' "misleading statements" caused a "substantial decrease in the number of patrons" and a "decrease in profits" were insufficient to state a claim for injurious falsehood).

Additionally, Dr. Osuagwu's claims for injurious falsehood are time-barred. A claim for "[i]njurious falsehood is governed by a one-year statute of limitations" (Korova, 2013 WL 417406, at *16) and accrues when the falsehood is first published (Madison Park Development Assocs., LLC v. Febbraro, No. 650613/2014, 2014 WL 6453788, at *10 (Sup. Ct. N.Y. Co. Nov. 18, 2014)). The Complaint alleges that the Form 1099s at issue were filed on or about January 31, 2012, January 31, 2013 and January 31, 2014, respectively. Compl., ¶¶ 15, 16 and 17. This action was commenced on July 1, 2015 – more than one year after the last of the Form 1099s at issue was filed – and therefore Dr. Osuagwu's injurious falsehood claims are time-barred.

### C. The Complaint Fails To State A Claim For Fraudulent And Intentional Misrepresentation (Counts VII, VIII and IX)

A fraudulent misrepresentation claim has four elements: "(1) the defendant made a material false representation; (2) the defendant intended to defraud the plaintiff thereby; (3) the plaintiff reasonably relied upon the representation; and (4) the plaintiff suffered damage as a result of such reliance." Carvel v. Ross, No. 09 Civ. 0722, 2011 WL 856283, at *22 (S.D.N.Y. Feb. 16, 2011). "Claims for . . . fraudulent misrepresentation . . . are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which requires a party to 'state with particularity the circumstances constituting fraud.'" Id.

The Complaint fails to meet the heightened pleading requirements of Fed. R. Civ. P. 9(b) since it fails to include specific facts to support an inference that GRMC intentionally filed false Form 1099s with intent to defraud or as to how Dr. Osuagwu was harmed. The Complaint alleges in conclusory fashion that "Defendants knew or should have known the payments reflected in the fraudulent Form 1099[s] were not made to Plaintiff and that the information provided to the IRS was false." Compl., ¶¶ 66, 73 and 80. However, these allegations fail to provide particularized facts from which one could infer that GRMC filed false Form 1099s with intent to defraud because, while the Complaint alleges that Dr. Osuagwu had hospital privileges at GRMC from 2008 to 2009 pursuant to the Recruitment Agreement which provided for a forgivable subsidy to be paid to Dr. Osuagwu, the Complaint fails to specify the subsidy amounts

Honorable P. Kevin Castel                                                                                     -5-

that Dr. Osuagwu received from GRMC, whether such amounts were repaid by Dr. Osugwu to GRMC or forgiven, and whether GRMC filed the Form 1099s with the IRS for the purpose of reporting cancellation of debt income received by Dr. Osuagwu. Additionally, the Complaint makes the conclusory allegation that "[a]s a proximate result of the fraudulent filing of the [Form 1099s] Plaintiff was harmed" (Compl., ¶¶ 66, 73 and 80) but contains no particularized facts as to the harm that Dr. Osuagwu allegedly suffered. Thus, the Complaint fails to state a claim for fraudulent and intentional misrepresentation.

### D. The Complaint Fails To State A Claim For Intentional Infliction of Emotional Distress (Counts X, XI and XII)

An intentional infliction of emotional distress claim "has four elements: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." Carvel, 2011 WL 856283, at *27 (citation omitted). The conduct alleged in the Complaint – the filing of the Form 1099s with the IRS – is not "extreme and outrageous conduct," and there are no allegations of severe emotional distress.

Further, Dr. Osuagwu's claims for intentional infliction of emotional distress are time-barred. "The statute of limitations for a claim of intentional infliction of emotional distress is one year, accruing on the date the tort was committed." Id. (citation omitted). As noted above, the Complaint alleges that the Form 1099s at issue were filed on January 31, 2012, January 31, 2013 and January 31, 2014, respectively. Compl., ¶¶ 15, 16 and 17. This action was commenced on July 1, 2015, which was more than one year after the last of the Form 1099s at issue was filed and the tort was allegedly committed.

### E. The Complaint Fails To State A Claim For Civil Conspiracy (Count XIII)

"It is well settled under New York law that there is no substantive tort of conspiracy." Lewis v. Rosenfeld, 138 F. Supp. 2d 466, 479 (S.D.N.Y. 2001). "In order to state a claim for conspiracy [a] plaintiff must allege an independent actionable tort and four additional elements: (1) a corrupt agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) a party's intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." Id. Here, because, among other elements, the Complaint fails to allege an independent actionable tort, it fails to state a conspiracy claim.

### CONCLUSION

For the foregoing reasons, GRMC respectfully requests leave to move to dismiss the Complaint, with the motion to be filed on or before September 25, 2015, Dr. Osuagwu's opposition to be filed on or before October 16, 2015 and GRMC's reply to be filed on or before October 30, 2015. Thank you for your attention to this matter.

Respectfully submitted,

Mark R. Zancolli

cc:     All counsel of record (via ECF)

7676798.7