Mark R. Zancolli
Brandon J. Isaacson
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, New York 10005
Tel. (212) 732-3200
Fax: (212) 732-3232
*Attorneys for Defendant*
*Gila Regional Medical Center*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

CHINONYEREM OSUAGWU, M.D.,    :
   :
                   Plaintiff,    :     Civ. No. 15 CV 05152 (PKC)
   :
          v.    :
   :
GILA REGIONAL MEDICAL CENTER,    :
JOHN DOE and JANE DOE,    :
   :
              Defendants.    :
   :
   :
   :
   :
   :

-------------------------------------------------------------- X

### REPLY MEMORANDUM OF LAW OF DEFENDANT
### GILA REGIONAL MEDICAL CENTER IN FURTHER SUPPORT OF ITS
### MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... ii-iii

ARGUMENT ............................................................................................................ 1

POINT I

PLAINTIFF'S CLAIMS ARE BARRED BY THE SETTLEMENT AGREEMENT .............. 1

POINT II

THE COMPLAINT FAILS TO STATE A CLAIM FOR UNDER 26 U.S.C. § 7434 ............. 4

POINT III

THE COMPLAINT FAILS TO STATE A CLAIM FOR INJURIOUS FALSEHOOD ........... 6

POINT IV

THE COMPLAINT FAILS TO STATE A CLAIM FOR FRAUDULENT AND
INTENTIONAL MISREPRESENTATION ............................................................... 7

POINT V

THE COMPLAINT FAILS TO STATE A CLAIM FOR IIED ................................................. 8

POINT VI

GRMC SHOULD NOT BE ESTOPPED FROM ASSERTING THAT PLAINTIFF'S
INJURIOUS FALSEHOOD AND IIED CLAIMS ARE TIME BARRED .............................. 9

CONCLUSION ......................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

BRH Builders, Inc. v. U.S.,
    620 F. Supp. 7 (C.D. Ill. 1985) ....................................................................5

Campbell v. Chabot,
    189 A.D.2d 746, 592 N.Y.S.2d 423 (2d Dep't 1993) ..............................9, 10

Howell v. New York Post Co., Inc.,
    81 N.Y.2d 115 (N.Y. 1993) ..........................................................................8

Kaye v. Trump,
    58 A.D.3d 579, 873 N.Y.S.2d 5 (1st Dep't 2009) .........................................9

Korova Milk Bar of White Plains, Inc. v. PRE Properties, LLC,
    No. 11 Civ. 3227 (ER), 2013 WL 417406 (S.D.N.Y. Feb. 4, 2013) ...........6

Rubycz-Boyar v. Mondragon,
    15 A.D.3d 811, 790 N.Y.S.2d 266 (3d Dep't 2005) .....................................2

Shiner v. Turnoy,
    29 F. Supp. 3d, 1156 (N.D. Ill. 2014) ..........................................................4

Simcuski v. Saeli,
    44 N.Y.2d 442, 406 N.Y.S.2d 259 (N.Y. 1978) ...........................................9

Slatkin v. Lancer Litho Packaging Corp.,
    33 A.D.3d 421, 822 N.Y.S.2d 507 (1st Dep't 2006) .....................................9

Vandenheede v. Vecchio,
    541 Fed. Appx. 577 (6th Cir. 2013) ..............................................................6

**FEDERAL STATUTES**

26 U.S.C. § 7434(a) ...........................................................................................4, 5, 6

I.R.C. § 6041(a) ........................................................................................................5

I.R.C. § 6050P(a) ......................................................................................................5

**RULES**

Fed. R. Civ. P. 9(b) ..................................................................................................7

7727924.2

**REGULATIONS**

26 CFR § 1.605P-1(a)(1) ............................................................................................5

26 CFR § 1.6041-1(a)(1)(i) ........................................................................................5

7727924.2

Defendant Gila Regional Medical Center ("GRMC") respectfully submits this reply memorandum of law in further support of its motion to dismiss the Complaint of plaintiff, Chinonyerem Osuagwu, M.D. ("Dr. Osuagwu" or "Plaintiff").

## ARGUMENT

### POINT I
### PLAINTIFF'S CLAIMS ARE BARRED BY THE SETTLEMENT AGREEMENT

Dr. Osuagwu's claims in this action are barred by the general release and other terms of the Settlement Agreement.[1]   The Form 1099s that are the subject of Dr. Osuagwu's claims in this action relate to cancellation of indebtedness income arising from the subsidies that Dr. Osuagwu received from and failed to repay to GRMC pursuant to the Recruitment Agreement, and Dr. Osuagwu's receipt of and failure to repay those subsidies were also the subject of the NM State Court Lawsuit (see Young Decl., Ex. 2, Complaint in the NM State Court Lawsuit).  Plaintiff contends that the Settlement Agreement does not bar his claims in this action because "the claims [in the State Lawsuit] did not involve any allegation or contention that defendants attempted to injure plaintiff and expose him to civil and penalties by filing false Reports."  Pl. Memo at 11.   However, Plaintiff's contention ignores the broad language of the Settlement Agreement in which he agreed to release GRMC from, among other things, "all claims of any nature whatsoever which have heretofore been made or which could have been made in the Lawsuits or otherwise and which may hereafter arise . . . or from claims arising in any other way directly or indirectly, as a result of the alleged acts, or the Lawsuits.  It is the intent of the Parties that this general release constitutes a full, mutual, and complete release of all claims among the

---

[1]Defined terms herein have the meanings ascribed to them in GRMC's Memorandum of Law in Support of its Motion to Dismiss, dated October 16, 2015 ("GRMC's Moving Memo") [Doc. No. 22].

Parties." Young Decl., Ex. 7, Settlement Agreement, § II (emphasis added).[2]  As noted above, the Complaint in the NM State Court Lawsuit contained claims and allegations that Dr. Osuagwu received from and failed to repay to GRMC subsidies under the Recruitment Agreement.  See Young Decl., Ex. 2, Complaint in the NM State Lawsuit.  As such, Dr. Osuagwu's claims in this action are barred by the general release in the Settlement Agreement because they are all based on the 2011, 2012 and 2013 Form 1099s which arose out of the subsidies which Dr. Osuagwu received from and failed to repay to GRMC, which are also the subject of the claims and allegations of the Complaint in the NM State Court Lawsuit.[3]

Dr. Osuagwu further contends that the last Form 1099 (i.e., the 2013 Form 1099) was not filed until after the execution of the Settlement Agreement and that the Settlement Agreement therefore cannot apply to it. (Pl. Memo at 11-12.)  However, a release may cover claims subsequent to its execution which "are specifically embraced within the release or fall within the fair import of its terms."  See e.g., Rubycz-Boyar v. Mondragon, 15 A.D.3d 811, 812, 790 N.Y.S.2d 266, 267 (3d Dep't 2005).  As noted above, the general release in the Settlement Agreement provides that Dr. Osuagwu agreed to release GRMC from claims arising after its execution, as it releases "all claims of any nature whatsoever which have heretofore been made

---

[2]Dr. Osuagwu was represented by counsel in connection with the Settlement Agreement, which was also signed by his counsel.  Young Decl., Ex. 7, Settlement Agreement, at 8, 11.

[3] In addition to the broad release language in Sections II, IV, and IX of the Settlement Agreement – which Plaintiff's opposition completely fails to address – Dr. Osuagwu's claims in this action are barred by Section V of the Settlement Agreement, which provides in part that Dr. Osuagwu agreed that he was not relying on any statements or representations by GRMC as to the legal or income tax consequences of the Settlement Agreement and that he released GRMC from any and all claims relating to the legal or income tax consequences of the Settlement Agreement.  See Young Decl., Ex. 7, Settlement Agreement, § V.  Because the Form 1099s that are the subject of Dr. Osuagwu's claims in this action relate to the cancellation of indebtedness income arising from the subsidies that Dr. Osuagwu received from GRMC, Section V of the Settlement Agreement bars his claims since it released GRMC from all claims arising from the legal or income tax consequences of the Settlement Agreement, including claims arising from the legal or income tax consequences of GRMC's release of Dr. Osuagwu's indebtedness with regard to the subsidies that he had received from and not repaid to GRMC.

or which could have been made in the Lawsuits <u>or otherwise and which may hereafter arise</u> . . .
<u>or from claims arising in any other way directly or indirectly, as a result of the alleged acts, or</u>
<u>the Lawsuits.  It is the intent of the Parties that this general release constitutes a full, mutual, and</u>
<u>complete release of all claims among the Parties."</u>  Young Decl., Ex. 7, Settlement Agreement, §
II (emphasis added). Accordingly, Dr. Osuagwu's claims based on the 2013 Form 1099 which
was filed after the execution of the Settlement Agreement are embraced within the release and
fall within the fair import of its terms since – like the 2011 and 2012 Form 1099s – the 2013
Form 1099 arose out of the subsidies which Dr. Osuagwu received from and failed to repay to
GRMC, which are also the subject to the claims and allegations of the Complaint in the NM
State Court Lawsuit.

Plaintiff's contention that GRMC's allegedly fraudulent conduct voided the terms of the
release (Pl. Memo at 12) is similarly without merit.  First, while Plaintiff contends that GRMC
"engag[ed] in the fraudulent filing of the Reports, and intentionally fail[ed] to provide [him] with
copies of the Reports as required by law" and that "he did not even know about them at the time
he . . . entered into the Settlement Agreement" (Pl. Memo at 11, 12), his argument ignores the
express language in the Settlement Agreement in which he agreed to terminate and release all
claims "known or unknown" and future claims for future damages arising out of or relating to
any of the allegations in the Lawsuits, including but not limited to the following language:  that
the Settlement Agreement's purpose is "to terminate all controversy and claims among the
Parties of whatsoever nature, <u>known or unknown</u> . . . ."; and "Chinonyerem Osuagwu, M.D.
understands and acknowledges that he may have suffered damages and claims that are unknown
at the present time.  By the terms of this Agreement, all such future claims for any and all future
damages that arise out of or relate to any allegations in the Lawsuits are forever foreclosed,

released and dismissed with prejudice." Young Decl., Ex. 7, Settlement Agreement, § IV (emphasis added).[4]

For the above reasons, the terms of the Settlement Agreement and general release therein bar Plaintiff's claims in this action.

## POINT II
## THE COMPLAINT FAILS TO STATE A CLAIM FOR UNDER 26 U.S.C. § 7434

Because Dr. Osuagwu failed to repay GRMC the subsidies that he received from GRMC, and because the Recruitment Agreement required him to repay the subsidies over a term of four years (Recruitment Agreement, § 3.5.1) and provided for the forgiveness of the repayment of the subsidies over a term of three years if he continued to perform under the Recruitment Agreement (Recruitment Agreement, §§ 3.5.2 and 3.5.3), GRMC's accounting department had a good faith basis for believing that it was properly reporting cancellation of debt income received by Dr. Osuagwu when it filed the 2011, 2012 and 2013 Form 1099s with the IRS. Accordingly, GRMC's filing of those information returns was not willfully fraudulent within the meaning of 26 U.S.C. § 7434(a), and Dr. Osuagwu's claims against GRMC for fraudulent filing of an information return under 26 U.S.C. § 7434(a) should be dismissed.[5]

Plaintiff's opposition contends that GRMC did not have a good faith belief that it was properly reporting cancellation of debt income to the IRS because GRMC commenced the NM

---

[4] In addition, the Complaint fails to adequately allege fraud as a basis for avoiding the application of the Settlement Agreement and general release to this action, based in part on Plaintiff's inability to establish reasonable reliance. Since Dr. Osuagwu agreed in Section V of the Settlement Agreement that he was not relying on any statements or representations of GRMC as to the legal or income tax consequences of the Settlement Agreement (which included the cancellation of indebtedness income resulting from the release of GRMC's claim against Dr. Osuagwu for repayment of the subsidies), he could not have relied on any allegedly fraudulent misrepresentation or omission by GRMC with regard to the Form 1099s at issue when he entered into the Settlement Agreement since those Form 1099s also related to the cancellation of debt income resulting from Dr. Osuagwu's failure to repay the subsidies.

[5] See Shiner v. Turnoy, 29 F. Supp. 3d. 1156, 1162 (N.D.Ill. 2014) (willfulness under 26 U.S.C. § 7434(a) "connotes a voluntary, intentional violation of a legal duty" and "attempt[ing] to deceive the IRS by filing [a] 1099 without believing that it was true.").

State Court Lawsuit before filing the Form 1099s. Pl. Memo at 13. However, case law and administrative pronouncements from the IRS indicate that the filing of an information return to report the cancellation of debt does not prohibit a collections suit against the debtor.[6] Moreover, as emphasized in GRMC's Moving Memo, the Complaint fails to contain specific allegations supporting a plausible inference that GRMC willfully filed fraudulent information returns. The Complaint alleges in conclusory fashion that at the time that GRMC filed the Form 1099s, it "knew that no payments were made to Plaintiff to warrant the filing of any of the Form 1099s with the IRS." Compl., ¶ 18. However, while the Complaint alleges that Dr. Osuagwu had hospital privileges at GRMC from 2008 to 2009 pursuant to the Recruitment Agreement which provided for a forgivable subsidy to be paid to Dr. Osuagwu (Compl., ¶¶ 8-11), the Complaint fails to specify the subsidies that Dr. Osuagwu received from GRMC, whether such amounts were repaid by Dr. Osuagwu or forgiven, and whether GRMC filed the Form 1099s for the purpose of reporting cancellation of debt income received by Dr. Osuagwu. Similarly, Dr. Osuagwu's opposition papers do not dispute that Dr. Osuagwu received subsidies from GRMC under the Recruitment Agreement and that he failed to repay such amounts. As such, Dr. Osuagwu's 26 U.S.C. § 7434 claim should be dismissed because the Complaint fails to allege

---

[6] See, e.g., BRH Builders, Inc. v. U.S., 620 F. Supp. 7, 10 (C.D. Ill. 1985) ("[t]he mere existence of a suit at the time a debt is claimed to be worthless does not establish that the debt has value" and "[t]he continued prosecution of a suit to quell rumors, or to obtain a worthless judgment, does not jeopardize a claim that the debt was worthless for tax purposes") (citations omitted); IRS Ltr. Rul. 2005-0207, 2005 WL 3561135, at 3 (Oct. 7, 2005) ("The Internal Revenue Service does not view a Form 1099-C as an admission by the creditor that it has discharged the debt and can no longer pursue collection"); IRS Ltr. Rul. 2005-0208, 2005 WL 3561136, at A5 (Oct. 7, 2005) ("Section 6050P and the regulations do not prohibit collection activity after a creditor reports by filing a Form 1099-C"). Further, contrary to Plaintiff's contentions, GRMC's use of Forms 1099-MISC instead of Forms 1099-C does not support a plausible inference that GRMC willfully filed fraudulent information returns, as Federal tax law imposes a general duty to report any taxable income paid or given to Plaintiff during any taxable year (see I.R.C. § 6041(a); Treas. Reg. 26 CFR § 1.6041-1(a)(1)(i)), and only certain government agencies and businesses engaged in lending money are required to report the cancellation of debt on Form 1099-C (see I.R.C. § 6050P(a); Treas. Reg. 26 CFR § 1.6050P-1(a)(1)).

7727924.2

specific facts supporting a plausible inference that GRMC willfully filed fraudulent information returns, as opposed to filing the information returns in good faith to report cancellation of debt income which Dr. Osuagwu had received from but did not repay to GRMC under the Recruitment Agreement.[7]

## POINT III
## THE COMPLAINT FAILS TO STATE A CLAIM FOR INJURIOUS FALSEHOOD

Because the Complaint is devoid of any allegations that the Form 1099s that are the subject of Dr. Osuagwu's injurious falsehood claims relate to the quality of any goods or services provided by Dr. Osuagwu, the injurious falsehood claims should be dismissed.[8]

Additionally, the Complaint does not allege special damages with the requisite specificity to proceed on an injurious falsehood claim, merely alleging, without any itemization, that the filing of the Form 1099s "increase[ed] Plaintiff's liability to the IRS and New York State tax authorities" and that "Plaintiff suffered damages, including significant attorneys' fees" (Compl., ¶¶ 41, 47, 50, 55, 58 and 63).   Dr. Osuagwu's opposition memo states that the Complaint "alleges that plaintiff spent significant attorneys' fees (i.e., $25,000) as a direct result of the false IRS filings, thus satisfying the special damages element."  Pl. Memo at 16-17.  However, nowhere in the Complaint is it alleged that Dr. Osuagwu spent $25,000 in attorneys' fees.

---

[7] In <u>Vandenheede v. Vecchio,</u> 541 Fed. Appx. 577, 578 (6th Cir. 2013), the plaintiff contended that defendants, the trustees of her deceased boyfriend's trust, fraudulently filed Forms 1099 in her name reporting that the trust paid her for "non-employee compensation" when such payments instead were for her living expenses.  In affirming the dismissal of plaintiff's claim under 26 U.S.C. § 7434, the court stated that plaintiff "does not suggest a different or preferable way that the trustees should have categorized the payments for tax purposes or who (other than her) should have suffered the tax consequences." <u>Id.</u> at 580.  The court also held that plaintiff's complaint "fail[ed] to include specific facts supporting an inference of scienter," as she alleged only that the trustees knew she "never performed compensated services" but "she specified no alternative take on how and for what the money was paid." <u>Id.</u> at 581. Likewise, here, the Complaint fails to allege specific facts to support a plausible inference that GRMC willfully filed fraudulent information returns, as the Complaint fails to address, among other things, whether Plaintiff repaid the subsidies he received under the Recruitment Agreement or how the debt (and cancellation thereof) arising from the subsidies he received under the Recruitment Agreement should be treated for tax purposes.

[8] "An injurious falsehood is confined to denigrating the quality of the plaintiff's business's goods or services." <u>See</u> <u>Korova Milk Bar of White Plains, Inc. v. PRE Properties, LLC,</u> No. 11 Civ. 3227 (ER), 2013 WL 417406, at *16 (S.D.N.Y. Feb. 4, 2013).

<u>POINT IV</u>
**THE COMPLAINT FAILS TO STATE A CLAIM FOR FRAUDULENT AND**
<u>**INTENTIONAL MISREPRESENTATION**</u>

The Complaint fails to meet the heightened pleading requirements of Fed. R. Civ. P. 9(b) since it fails to include specific facts to support an inference that GRMC intentionally filed false Form 1099s with intent to defraud or as to how Dr. Osuagwu was harmed.   The Complaint alleges in conclusory fashion that "Defendants knew or should have known the payments reflected in the fraudulent Form 1099[s] were not made to Plaintiff and that the information provided to the IRS was false" (Compl., ¶¶ 66, 73 and 80), and Plaintiff's opposition contends that "in three consecutive years, 2011-2013, defendants filed forms with the IRS that falsely claimed that they paid significant sums of money (Compl., ¶¶ 15-17)" (Pl. Memo at 17). However, these allegations fail to provide particularized facts from which one could infer that GRMC filed false Form 1099s with intent to defraud.  As noted above, Dr. Osuagwu failed to repay the subsidies that he received from GRMC as he was required to do under the Recruitment Agreement, and the Recruitment Agreement provided for the forgiveness of the repayment of the subsidies over a term of three years if he continued to perform under the Recruitment Agreement (Recruitment Agreement, §§ 3.5.2 and 3.5.3).   However, the Complaint does not address the subsidy payments that GRMC made to Dr. Osuagwu under the Recruitment Agreement and whether the Form 1099s at issue related to those payments.  Again, while the Complaint alleges that Dr. Osuagwu had hospital privileges at GRMC from 2008 to 2009 pursuant to the Recruitment Agreement which provided for a forgivable subsidy to be paid to Dr. Osuagwu (Compl., ¶¶ 8-11), the Complaint fails to specify the subsidies that Dr. Osuagwu received from GRMC, whether such amounts were repaid by Dr. Osuagwu or forgiven, and whether GRMC filed the Form 1099s for the purpose of reporting cancellation of debt income received by Dr. Osuagwu.   Similarly, Dr. Osuagwu's opposition papers do not dispute that Dr. Osuagwu

7

received subsidies from GRMC under the Recruitment Agreement and that he failed to repay such amounts. As such, Dr. Osuagwu's fraudulent and intentional misrepresentation claim should be dismissed because the Complaint fails to allege specific facts supporting an inference that GRMC intentionally filed Form 1099s with the intent to defraud, as opposed to filing the information returns in good faith to report cancellation of debt income which Dr. Osuagwu had received from but not repaid to GRMC under the Recruitment Agreement.[9]

**POINT V**
**THE COMPLAINT FAILS TO STATE A CLAIM FOR IIED**

The Complaint fails to state a claim for intentional infliction of emotional distress ("IIED") because the conduct alleged in the Complaint does not constitute "extreme and outrageous" conduct to maintain an IIED claim, and Plaintiff's opposition papers fail to point to any allegations in the Complaint of Plaintiff's having sustained severe emotional distress.

Contrary to Dr. Osuagwu's contentions (Pl. Memo at 18-20), the conduct alleged in the Complaint fails to meet the "extreme and outrageous conduct" standard for maintaining an IIED claim. The element of outrageous conduct has been characterized as "rigorous and difficult to satisfy."[10] The conduct alleged in the IIED claims in the Complaint (i.e., that GRMC intentionally filed false Form 1099s with the IRS with the intention of subjecting Plaintiff to criminal prosecution for tax evasion and/or filing of false tax returns, Compl., ¶¶ 85-105), even accepted as true (which it is not), does not constitute sufficiently "extreme and outrageous

---

[9] Additionally, the Complaint makes the conclusory allegation that "[a]s a proximate result of the fraudulent filing of the [Form 1099s] Plaintiff was harmed" (Compl., ¶¶ 66, 73 and 80) but contains no particularized facts as to the harm that Dr. Osuagwu allegedly suffered, which is further reason why the Complaint fails to state a claim for fraudulent and intentional misrepresentation.

[10] See Howell v. New York Post Co., Inc., 81 N.Y.2d 115, 122 (N.Y. 1993) (stating that "of the intentional infliction of emotional distress claims considered by this Court, every one has failed because the alleged conduct was not sufficiently outrageous").

8

conduct" to maintain an IIED claim under New York law, as courts have dismissed IIED claims involving allegations of worse conduct.[11]

**POINT VI**

**GRMC SHOULD NOT BE ESTOPPED FROM ASSERTING THAT PLAINTIFF'S INJURIOUS FALSEHOOD AND IIED CLAIMS ARE TIME BARRED**

Dr. Osuagwu's injurious falsehood and IIED claims should be dismissed because, besides being inadequately pled, they are time barred based on the applicable one year statute of limitations, as this action was commenced on July 1, 2015 – more than one year after the last of the Form 1099s at issue was filed. Dr. Osuagwu's opposition contends that GRMC should be estopped from asserting that his injurious falsehood and IIED claims are time barred because, according to Dr. Osuagwu, GRMC "concealed the filing of the false Form 1099s from plaintiff." Pl. Memo at 15. Dr. Osuagwu's estoppel argument fails for a number of reasons.

First, because neither Dr. Osuagwu's Complaint nor his opposition papers assert that his Complaint was filed within a reasonable time after he learned of the Form 1099s at issue and in no event more than one year after he learned of the Form 1099s at issue, he has not alleged that GRMC's alleged conduct in concealing the filing of the Form 1099s from him prevented him from bringing his injurious falsehood and IIED claims within the one year limitations period.[12]

---

[11] See, e.g., Slatkin v. Lancer Litho Packaging Corp., 33 A.D.3d 421, 422, 822 N.Y.S.2d 507 (1st Dep't 2006) (affirming dismissal of IIED claim "as the conduct alleged – faxes and phone calls, including to the individual plaintiff's parents, threatening his arrest and criminal prosecution; instigation of the individual plaintiff's arrest by means of false statements to the police concerning plaintiff's indebtedness to defendants – [was] not so outrageous as to be utterly intolerable"); Kaye v. Trump, 58 A.D.3d 579, 873 N.Y.S.2d 5 (1st Dep't 2009) (affirming dismissal of IIED claim, ruling that plaintiff's allegations "that defendants variously made rude remarks to and about her, commenced two baseless lawsuits and filed a criminal complaint against her, and frightened her and her daughter by attempting to instigate her arrest" were not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community").

[12] "[T]he doctrine of estoppel is only available to a plaintiff who commences an action within a reasonable time after the facts giving rise to the estoppel have ceased to be operational" and "[i]n no event will a plaintiff be found to have exercised the required diligence where the action is deferred, after the discovery of the relevant facts, beyond the length of the legislatively prescribed period of limitation." See Campbell v. Chabot, 189 A.D.2d 746, 747, 592 N.Y.S.2d 423, 424 (2d Dep't 1993); see also Simcuski v. Saeli, 44 N.Y.2d 442, 450-451, 406 N.Y.S.2d 259 (N.Y. 1978).

9

Dr. Osuagwu's Complaint and opposition do not – because they cannot – assert that this action was commenced within one year after he learned of the Form 1099s at issue.  In that regard, more than one year prior to his commencement of this action, Dr. Osuagwu communicated in writing with GRMC's counsel concerning the Form 1099s at issue.[13]  As such, because Dr. Osuagwu commenced this action on July 1, 2015 – more than one year after he learned of the Form 1099s at issue – he is not entitled to raise the doctrine of estoppel against GRMC to avoid the application of the one year statute of limitations to his injurious falsehood and IIED claims.[14]

## CONCLUSION

For the foregoing reasons, GRMC respectfully requests that the Court grant its motion to dismiss the Complaint in its entirety.

Dated: New York, New York
      December 16, 2015

Respectfully submitted,
CARTER LEDYARD & MILBURN LLP

By _____
    Mark R. Zancolli
    Brandon J. Isaacson
Two Wall Street
New York, New York 10005
Telephone: (212) 732-3200
Email: zancolli@clm.com
*Attorneys for Defendant*
*Gila Regional Medical Center*

---

[13] See accompanying December 16, 2015 Reply Declaration of Carrie Young, Exhibit 1, June 22, 2014 email from Dr. Osuagwu to CaraLyn Banks (an attorney representing GRMC), along with unsigned June 23, 2014 letter from Dr. Osuagwu addressed to "The Federal Trade Federation."

[14] Additionally, Dr. Osuagwu's estoppel argument fails because neither his Complaint nor his opposition papers assert that GRMC intended to forestall him from commencing a timely action.  "Where a defendant's misrepresentation was intended to forestall a plaintiff from commencing a timely action and the plaintiff justifiably relied upon that representation, the defendant will be estopped from raising the defense of the Statute of Limitations."  Campbell, 189 A.D.2d at 747 (citing Simcuski, 44 N.Y.2d at 450).  The Complaint and opposition papers do not allege that GRMC intended to forestall him from commencing a timely action, but instead allege that GRMC filed the Form 1099s at issue and failed to provide copies of them to him to subject him to criminal prosecution for tax evasion and/or filing of false tax returns.  Compl., ¶¶ 85-105; Pl. Memo at 19-20.

7727924.2