UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
CHINONYEREM OSUAGWU, M.D.,

                  Plaintiff,                        15-cv-05152 (PKC)

        -against-                          MEMORANDUM
                                                  AND ORDER

GILA REGIONAL MEDICAL CENTER, JOHN
DOE and JANE DOE,

                  Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

          Plaintiff Chinonyerem Osuagwu, M.D., commenced this action against defendant

Gila Regional Medical Center ("GRMC"), and two John Doe defendants, asserting claims under

26 U.S.C. § 7434 and state law.  Following dueling lawsuits between Dr. Osuagwu and GRMC,

the two parties entered into a settlement resolving their dispute concerning their earlier

agreement under which Dr. Osuagwu was to practice medicine in an area serviced by GRMC.

Throughout the dispute between the parties, GRMC continued to file annual information returns

("Form 1099s"), with the Internal Revenue Service ("IRS") that Dr. Osuagwu now alleges were

false, fraudulent and in retaliation for his lawsuit.  He alleges, among other things, that the Form

1099s were injurious falsehoods and resulted in the intentional infliction of emotional harm.

Before the Court is GRMC's motion to dismiss (Dkt. No. 19.)  For the following reasons,

GRMC's motion is granted.

BACKGROUND

          For the purposes of this motion, all non-conclusory factual allegations are

accepted as true, and all inferences are drawn in favor of the plaintiff, as the non-movant.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In February 2008, plaintiff Chinonyerem Osuagwu, M.D., entered into a recruiting agreement (the "Recruiting Agreement") with GRMC, "a county-owned and operated community hospital in Silver City, New Mexico." (Compl. ¶¶ 4, 8.) Pursuant to the Recruiting Agreement, Dr. Osuagwu agreed to engage in the full-time private practice of obstetrics and gynecology exclusively in the geographic area encompassing Silver City, New Mexico. (Compl. ¶ 8.) In return, GRMC agreed to subsidize Dr. Osuagwu's income for up to two years, with a subsidy not to exceed $265,000 per year. (Compl. ¶ 9.) Although Dr. Osuagwu was required to repay GRMC for any subsidy that he received, the Recruiting Agreement provided that the subsidy would be forgiven if Dr. Osuagwu "continued to practice medicine in the Silver City community for five years." (Compl. ¶ 10.) Subsidy forgiveness was also contingent upon Dr. Osuagwu maintaining clinical privileges at GRMC during the term of the Recruiting Agreement. (Id.)

Shortly after Dr. Osuagwu and GRMC entered into the Recruiting Agreement, their relationship deteriorated. In February 2009, GRMC withdrew Dr. Osuagwu's clinical privileges at GRMC based on alleged "erroneous allegations of misconduct." (Compl. ¶ 11.) Then, in February 2010, GRMC filed a complaint for breach of contract against Dr. Osuagwu in the Sixth Judicial District Court of New Mexico (the "State Litigation"). (Id.) On January 3, 2011, Dr. Osuagwu commenced a separate action against GRMC in the United States District Court of New Mexico, alleging violations of his civil rights pursuant to 42 U.S.C. § 1983 (the "Federal Litigation"). (Compl. ¶ 12.) In an agreement dated February 7, 2014, Dr. Osuagwu and GRMC entered into a Mutual Release and Confidential Settlement (the "Settlement Agreement") that settled all claims against one another in the State and the Federal Litigations. (Compl. ¶ 14.)

Dr. Osuagwu's claims in this action stem from GRMC's filing of certain tax documents with the IRS.  Specifically, Dr. Osuagwu contends that on January 31, 2012, GRMC filed a Form 1099-MISC ("2011 Form 1099") with the IRS stating that it paid Dr. Osuagwu $52,754 during the calendar year 2011.  (Compl. ¶ 15.)  On January 31, 2013, GRMC filed with the IRS a Form 1099-MISC ("2012 Form 1099") stating that it paid Dr. Osuagwu $39,422 for the calendar year 2012.  (Compl. ¶ 16.)  GRMC made another filing with the IRS on January 31, 2014 ("2014 Form 1099"), stating that it paid Dr. Osuagwu $19,711 for the calendar year 2013. (Compl. ¶ 17.)  Dr. Osuagwu alleges that the Form 1099s were false, that defendants knew that no payments were made to him, and that they failed to notify him of the filings as required by law.  (Compl. ¶¶ 15-19.)  Moreover, Dr. Osuagwu alleges that defendants' failure to provide him copies of the Form 1099s was intentional and malicious so as to prevent him from learning of the false filings, as well as in retaliation for his Federal Litigation.  (Compl. ¶¶ 20, 22.)  Dr. Osuagwu also asserts that he was unaware of the Form 1099s at the time he signed the Settlement Agreement and alleges that "GRMC and its agents . . . deliberately and fraudulently withheld from [him] information about the filing of the false and fraudulent Form 1099s to induce him to sign the [Settlement] Agreement."  (Compl. ¶¶ 23-24.)

LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  To state a plausible claim for relief, the plaintiff must plead "actual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  In assessing the sufficiency of the complaint, a district court must draw all

- 3 -

reasonable inferences in favor of the non-movant.  In re Elevator Antitrust Litig., 502 F.3d 47, 50

(2d Cir. 2007).  The court accepts as true all factual allegations in the complaint, "and then

determine[s] whether they plausibly give rise to an entitlement to relief."  Iqbal, 556 U.S. at 679.

Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action," however, are

not entitled to the presumption of truth.  Id. at 678.  "Dismissal is appropriate when 'it is clear

from the face of the complaint, and matters of which the court may take judicial notice, that the

plaintiff's claims are barred as a matter of law.'"  Parkcentral Global Hub Ltd. v. Porsche Auto.

Holdings SE, 763 F.3d 198, 208-09 (2d Cir. 2014) (quoting Conopco, Inc. v. Roll Int'l, 231 F.3d

82, 86 (2d Cir. 2000)).

DISCUSSION

Dr. Osuagwu alleges that GRMC willfully filed each Form 1099 containing

fraudulent information with the IRS in violation of 26 U.S.C. § 7434.  (Counts I-III).  He also

alleges that defendants are liable for injurious falsehood (Counts IV-VI), fraudulent and

intentional misrepresentation (Counts VII-XI), and intentional infliction of emotional distress

(Counts X-XII) for each fraudulent Form 1099 that they filed, as well as a single claim of civil

conspiracy (Count XIII).  GRMC argues that Dr. Osuagwu's claims are barred by the Settlement

Agreement, or alternatively, are meritless.

I.    Documents Considered on Motion to Dismiss

A district court will "not consider matters outside the pleadings in deciding a

motion to dismiss for failure to state a claim."  Nakahata v. New York-Presbyterian Healthcare

Sys., Inc., 723 F.3d 192, 202 (2d Cir. 2013) (citation omitted).  Only the allegations contained in

a plaintiff's complaint, and any documents attached or incorporated by reference therein are

considered.  Even if a document is not explicitly incorporated by reference, the Court may

consider it if the document is heavily relied upon, rendering "the document 'integral' to the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

Although Dr. Osuagwu did not attach any documents to his complaint, his complaint references and relies upon the Recruiting and Settlement Agreements, as well as the Form 1099s. The Court construes these documents—attached to GRMC's motion to dismiss— as integral to the complaint. The Court may also consider the complaints in both the State and Federal Litigations for the same reasons,[1] and for the additional reason that the Court may take judicial notice of the content of the two complaints, not for their truth but for the fact that certain allegations were made. Glob. Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006). The remaining materials submitted by defendants, however, fall outside the pleadings, and will not be considered. The amended Form 1099s, for example, were not relied upon or referenced in the complaint. Furthermore, the factual assertions contained in the declaration of Carrie Young, GRMC's Chief Compliance Officer, will not be considered.

II.    Settlement Agreement

GRMC contends that Dr. Osuagwu's current claims are barred by the general release contained in the Settlement Agreement. Affirmative defenses, including the enforcement of a general release, may be considered on a motion to dismiss only where the defense appears on the face of the complaint and documents incorporated or referenced therein. Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998). Here, Dr. Osuagwu refers to the Settlement Agreement between the parties and alleges, among other things, that defendants "fraudulently induced [him] into entering into" the Agreement. (Compl. ¶ 26.) Based on Dr. Osuagwu's multiple references to the Settlement Agreement, in addition to his specific

---

[1] Gila Regional Medical Center v. Osuagwu, No. 10 cv 045 (6th Dist. 2010), Young Decl. Ex. 2; Osuagwu v. Gila Regional Medical Center, 11 cv 001 (DJS) (D.N.M. 2011), Young Decl. Ex. 3.

allegations of fraudulent inducement, the Court concludes that it may entertain defendant's affirmative defense.

The Court cannot conclude that the Settlement Agreement unequivocally subsumes the claims brought by Dr. Osuagwu, because it has only been provided with a redacted version of the Settlement Agreement.  (Young Decl. Ex. 7.)  A general release is governed by principles of contract law.  Hansen v. Ford Motor Co., 120 N.M. 203, 206 (1995).[2]  In interpreting a contract, courts "give force and effect to the intent of the parties, . . . consider[ing] the entire contract and not just selected portions."  Medina v. Sunstate Realty, Inc., 119 N.M. 136, 138 (1995).  Because the Court has only received a redacted Settlement Agreement, it cannot review the release in the context of the Agreement as a whole.  This is especially true here, where GRMC relies upon provisions of the Settlement Agreement that have also been redacted.  (Young Decl. Ex. 7, §§ V, IX.)  While the redacted portions of the Settlement Agreement may be irrelevant, the Court cannot conclude as a matter of law that Dr. Osuagwu's claims are barred by the Settlement Agreement, because the redacted portions may have some impact on the scope of the general release.  Cf. Bild v. Konig, No. 09 cv 5576 (ARR) (VVP), 2011 WL 1563576, at *2 (E.D.N.Y. Apr. 25, 2011) (holding that the parties' failure to submit an unredacted contract prevented the court from determining whether plaintiff was an intended beneficiary of the contract).

---

[2] Consistent with the Settlement Agreement's choice of law provision, the Court applies New Mexico law for issues related to the validity and enforcement of the Agreement.  (Young Decl. Ex. 7, at 7.)  Although the Settlement Agreement also has a forum-selection clause calling for litigation in Albuquerque, New Mexico to resolve any disputes related to the Settlement Agreement, the provision is deemed waived for purposes of the present action.  Dart Mech. Corp. v. Johnson Controls, Inc., No. 13 cv 2941 (JS) (WDW), 2013 WL 5937424, at *2 (E.D.N.Y. Nov. 4, 2013) ("[W]hen a party disregards a forum selection clause and sues on a contract in an unauthorized forum, it waives the forum selection clause on the claims it pursues.").

III.   Fraudulent Filing of Information Returns

Under 26 U.S.C. § 7434, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return."  An information return—which is defined by 26 U.S.C. § 7434(f)—is fraudulent where the representations made therein are false.  Vandenheede v. Vecchio, 541 F. App'x 577, 580 (6th Cir. 2013); Bailey v. Shell W. E&P, Inc., No. 97 cv 0518, 1998 WL 185520, at *2 (N.D. Tex. Apr. 14, 1998), aff'd, 170 F.3d 184 (5th Cir. 1999).  "[W]illfulness in this context connotes a voluntary, intentional violation of a legal duty."  Vandenheede, 541 F. App'x at 580 (internal quotations omitted).  The claim "'requires proof of deceitfulness or bad faith in connection with filing an information return.'"  Cavoto v. Hayes, No. 08 cv 6957 (DHC), 2010 WL 2679973, at *4 (N.D. Ill. July 1, 2010) (quoting Rossman v. Lazarus, No. 08 cv 316 (JCC), 2008 WL 4181195, at *10 (E.D. Va. Sept. 3, 2008)), aff'd, 634 F.3d 921 (7th Cir. 2011); Nash v. United States, No. 02 cv 1725 (AGF), 2004 WL 3176885, at *3 (E.D. Mo. Oct. 12, 2004)).

To be actionable, a claim under section 7434 requires the filed information return to be "fraudulent."  26 U.S.C. § 7434.  The Court concludes that a claim under section 7434 is grounded in fraud and, therefore, must meet the heightened pleading standard of Rule 9(b), Fed. R. Civ. P.  See Vandenheede, 541 F. App'x at 579; Byers v. Edina Couriers, LLC, No. 11 cv 87 (PAM)(TNL), 2011 WL 8780388, at *4 (D. Minn. Nov. 17, 2011), aff'd, 475 F. App'x 638 (8th Cir. 2012); Gidding v. Zurich Am. Ins. Co., No. 15 cv 01176 (HSG), 2015 WL 6871990, at *4 (N.D. Cal. Nov. 9, 2015).  To satisfy Rule 9(b), a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007) (citation omitted).  "Although '[m]alice,

intent, knowledge and other condition of mind of a person may be averred generally,' this leeway is not a 'license to base claims of fraud on speculation and conclusory allegations.'" Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 187 (2d Cir. 2004) (quoting Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir.1995)). Rule 9(b) still requires a plaintiff to "'allege facts that give rise to a strong inference of fraudulent intent.'" Id. (quoting Acito, 47 F.3d at 52). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290–91 (2d Cir. 2006) (quoting Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir.1994)).

       A "strong inference of fraud" is the prevailing standard in the Second Circuit to meet the heightened pleading standard of Rule 9(b). To plead fraud under the Private Securities Litigation Reform Act ("PSLRA"), the Supreme Court requires courts to "take into account plausible opposing inferences." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 310 (2007). That is to say, under the PSLRA, "[t]he 'strong inference' standard is met when the inference of fraud is at least as likely as any non-culpable explanations offered." Slayton v. Am. Exp. Co., 604 F.3d 758, 766 (2d Cir. 2010). The Second Circuit has not expressly adopted the post-Tellabs body of case law outside the PSLRA context, although it has assumed, without deciding, that it applies. Stephenson v. PricewaterhouseCoopers, LLP, 482 F. App'x 618, 622 (2d Cir. 2012), as amended (June 13, 2012) ("We assume, without deciding, that post-Tellabs cases concerning scienter under federal securities law are relevant to determining whether Stephenson pled common law fraud with sufficient particularity under Rule 9(b)."). Moreover, other courts within this Circuit "considering fraud claims after Tellabs appear to have treated the

Tellabs framework as relevant and post-Tellabs cases as persuasive authority in considering common law fraud claims." Stephenson v. PricewaterhouseCoopers, LLP, 768 F. Supp. 2d 562, 572 (S.D.N.Y. 2011) (citing cases), aff'd, 482 F. App'x 618 (2d Cir. 2012), as amended (June 13, 2012).[3]

 The Court need not decide whether Tellabs's competing inference analysis controls in the non-PSLRA context such as the one here.  However, it is both logical and necessary for a court, in assessing whether a complaint alleges a strong inference of fraud, to consider what other inferences can be drawn from the pleadings.  The strength of any inference is determined by its context, and when multiple inferences can be drawn from an allegation, the strength or weakness of each inference will largely depend on the relative strength or weakness of the others.  Tellabs, 551 U.S. at 323 ("The strength of an inference cannot be decided in a vacuum.").  Here, the Court applies the Second Circuit's "strong inference of fraud" standard.  Even if Tellabs does not four-square control, this Court is nevertheless "guided by the Supreme Court's explanation of how competing inferences should be weighed in determining whether a particular inference should be considered 'strong.'"  Glidepath Holding B.V. v. Spherion Corp., 590 F. Supp. 2d 435, 451 (S.D.N.Y. 2007).

 Here, Dr. Osuagwu alleges that GRMC stated in IRS filings that it paid Dr. Osuagwu for the calendar years 2011 to 2013 (Compl. ¶¶ 15-17), and contends that those statements were fraudulent because GRMC "knew that no payments were made."  (Compl. ¶ 18.) The complaint is peppered with allegations related to GRMC's mental state in making those filings, at various times referring to GRMC's actions as intentional, willful and malicious.

---

[3] The Court expresses no view as to the applicability of Tellabs to SEC enforcement actions.  See S.E.C. v. Dunn, 587 F. Supp. 2d 486, 501 (S.D.N.Y. 2008) (holding that the PSLRA's heightened pleading standard did not apply to civil enforcement actions brought by the SEC).

(Compl. ¶¶ 22, 30, 34, 38.)  These allegations, though, are conclusory, and Dr. Osuagwu fails to allege particularized facts that would give rise to a strong inference of fraudulent intent.  Acito, 47 F.3d at 52.  Other than the conclusory assertion that GRMC acted in retaliation for filing the Federal Litigation, Dr. Osuagwu has not alleged any facts to show that GRMC and its agents had a motive to commit fraud, or acted with conscious misbehavior or recklessness.  Id. at 53 ("[C]onclusory allegations of fraud do not satisfy the pleading requirements of Rule 9(b).").

The relative weakness of the purported inference of fraud is demonstrated by the history between the parties.  The complaint alleges that a contractual relationship existed between Dr. Osuagwu and GRMC, and that GRMC agreed to subsidize Dr. Osuagwu's income for up to two years.  (Compl. ¶ 9.)  When the relationship between the parties deteriorated, GRMC sued Dr. Osuagwu for the return of subsidies (State Litigation Compl. ¶¶ 24, 27, Young Decl. Ex. 2), and Dr. Osuagwu sued for "lost past, present and future wages. . . ." (Federal Litigation Compl. ¶151, Young Dec. Ex. 3.)  The Settlement Agreement—which settled the parties' claims—acknowledges that it could have actual or potential tax consequences to Dr. Osuagwu, and expressly provided that Dr. Osuagwu "is not relying on any advice, statements or representations of [GRMC] . . . as to the legal and/or income tax consequences of this Agreement."  (Young Decl. 7, at 5.)  The inference that GRMC knowingly would file a false Form 1099 with the IRS thereby exposing itself to civil and criminal penalties in order to retaliate for claims to be resolved by the very Settlement Agreement that it was then entering into is relatively weak, and unsupported by particularized facts.  It is far more plausible that any error contained in a Form 1099 was a result of inadvertence or mistake.  Accordingly, Dr. Osuagwu has failed to allege fraud with sufficient particularity to meet the heightened pleading requirements of Rule 9(b).

- 10 -

IV.   <u>Injurious Falsehood</u>

The tort of injurious falsehood "'consists of the knowing publication of false matter derogatory to the plaintiff's business of a kind calculated to prevent others from dealing with the business or otherwise interfering with its relations with others, to its detriment.'" <u>Kasada, Inc. v. Access Capital, Inc.</u>, No. 01 cv 8893 (GBD), 2004 WL 2903776, at *15 (S.D.N.Y. Dec. 14, 2004) (quoting <u>Waste Distillation Tech., Inc. v. Blasland & Bouck Engineers, P.C.</u>, 136 A.D.2d 633, 633 (2d Dep't 1988)).  To state a claim for relief for injurious falsehood, a plaintiff must allege "(1) falsity of the alleged statements; (2) publication to a third person; (3) malice; and (4) special damages."  <u>Korova Milk Bar of White Plains, Inc. v. PRE Properties, LLC</u>, No. 11 cv 3327 (ER), 2013 WL 417406, at *16 (S.D.N.Y. Feb. 4, 2013) (citing <u>Kasada</u>, 2004 WL 2903776 at *16).

Dr. Osuagwu alleges that each Form 1099 filed by GRMC supports a claim for injurious falsehood.  Even assuming that Dr. Osuagwu's claims for injurious falsehood are timely, he has failed to allege that the false information contained in the Form 1099s had any impact on his business dealings.  <u>Henneberry v. Sumitomo Corp. of Am.</u>, 415 F. Supp. 2d 423, 470 (S.D.N.Y. 2006) (observing that "[t]he New York Court of Appeals has stated that injurious falsehood lies where 'the statement is confined to denigrating the quality of the [plaintiff's] business' goods or services'") (citing cases).  Furthermore, Dr. Osuagwu's claims for injurious falsehood must be dismissed for the independent reason that he has failed to allege special damages.  <u>Kasada</u>, 2004 WL 2903776, at *16 ("[A] motion to dismiss a claim of injurious falsehood may be granted for failure to allege special damages with the requisite specificity.") (citations omitted); <u>Korova</u>, 2013 WL 417406, at *17 (citations omitted).  Dr. Osuagwu only alleges that he "suffered damages as a proximate result of the filing of the fraudulent informational return, including significant attorneys' fees."  (Compl. ¶¶ 47, 55, 63.)  These

allegations fall far short of the particularity necessary to survive a motion to dismiss.  Rall v. Hellman, 284 A.D.2d 113, 114 (1st Dep't 2001) ("While costs, such as counsel fees, incurred in avoiding damage to plaintiff's reputation and business may be actionable under an injurious falsehood theory, plaintiff's complaint was nevertheless deficient as he failed to identify his special damages with sufficient particularity.").

   V.   Fraudulent and Intentional Misrepresentation

      To state a claim for relief for fraudulent misrepresentation, "a plaintiff must allege a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury."  Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 178 (2011) (internal quotations omitted).  Claims for fraudulent misrepresentation are subject to the heightened pleading standard of Rule 9(b), Fed. R. Civ. P.  Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC, 783 F.3d 395, 402 (2d Cir. 2015)

      Assuming that Dr. Osuagwu's claims for fraudulent misrepresentation are timely and that he has alleged fraud with particularity, they must nevertheless be dismissed because he has failed to allege detrimental reliance, a necessary element of fraudulent misrepresentation. Mandarin Trading, 16 N.Y.3d at 178; see also Pasternack v. Lab. Corp. of Am. Holdings, __ N.E.3d __, 2016 WL 3543713 (June 30, 2016) ("[T]his Court has stated on a number of occasions that a fraud claim requires the plaintiff to have relied upon a misrepresentation by a defendant to his or her detriment.").  The complaint only alleges that the IRS, *not Dr. Osuagwu*, relied on GRMC's misstatements (Compl. ¶¶ 69, 76, 82); however, the New York Court of Appeals has recently affirmed that third-party reliance is insufficient to make out a fraud claim. Pasternack, 2016 WL 3543713 ("We, therefore, decline to extend the reliance element of fraud

to include a claim based on the reliance of a third party, rather than the plaintiff.").  Accordingly, Dr. Osuagwu has failed to state claims for which relief could be granted.

      VI.    <u>Intentional Infliction of Emotional Distress</u>

         To state a claim for intentional infliction of emotional distress, a plaintiff must allege "[1] extreme and outrageous conduct; [2] intent to cause, or disregard of a substantial probability of causing, severe emotional distress; [3] a causal connection between the conduct and injury; and [4] severe emotional distress."  <u>Chanko v. Am. Broad. Companies Inc.</u>, 27 N.Y.3d 46, 56 (2016).  "'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  <u>Id.</u> (quoting <u>Howell v. New York Post Co.</u>, 81 N.Y.2d 115, 122 (1993)).  The bar for what conduct constitutes "outrageous conduct" is extremely high, and "of the intentional infliction of emotional distress claims considered by [the New York Court of Appeals], every one has failed because the alleged conduct was not sufficiently outrageous."  <u>Howell</u>, 81 N.Y.2d at 122.  Whether conduct arises to the requisite level of outrageousness is "most susceptible to a determination as a matter of law— which is designed to filter out petty complaints and assure that the emotional distress is genuine."  <u>Chanko</u>, 27 N.Y.3d at 57.  And because "plaintiffs must already be aware of the offending conduct and have suffered emotional distress as a result thereof," discovery is generally unnecessary to determine the sufficiency of a plaintiff's allegations.  <u>Id.</u> at 58 n.3.

         Here, assuming all of Dr. Osuagwu's allegations are true and drawing all reasonable inferences in his favor, his complaint nevertheless fails to state a claim for relief for intentional infliction of emotional distress.  Although the complaint facially addresses the element of outrageous conduct, Dr. Osuagwu's allegations—that GRMC intentionally filed fraudulent Form 1099s in retaliation of his Federal Litigation and to subject him to criminal

prosecution—do not amount to the sort of extreme and outrageous conduct necessary to sustain his claims. Chanko, 27 N.Y.3d at 57-58 (news station's unconsented broadcast and dissemination of footage of the final moments of plaintiff's relative's life was not sufficiently outrageous); Fischer v. Maloney, 43 N.Y.2d 553, 557 (1978) (defendants' commencement of a defamation action against plaintiff "deliberately to malign, harass and intimidate plaintiff" was not sufficiently outrageous); Kaye v. Trump, 58 A.D.3d 579, 579 (1st Dep't 2009) (holding that plaintiff failed to alleged sufficiently outrageous conduct where "defendants variously made rude remarks to and about her, commenced two baseless lawsuits and filed a criminal complaint against her, and frightened her and her daughter by attempting to instigate her arrest"); Slatkin v. Lancer Litho Packaging Corp., 33 A.D.3d 421, 422 (1st Dep't 2006) (holding that conduct does not constitute outrageous conduct where, among other things, defendant instigated the arrest of plaintiff "by means of false statements to the police"); Brown v. Sears Roebuck & Co., 297 A.D.2d 205, 212 (1st Dep't 2002) (dismissing claim, sua sponte, because the fact that defendant "gave false information to the police" was not sufficiently outrageous conduct).

Dr. Osuagwu's claims for intentional infliction of emotional distress fail for the independent reason that he has not alleged that he suffered severe emotional distress. Dr. Osuagwu only vaguely states that "[a]s the proximate result of Defendants' conduct and actions, [he] suffered damages." (Compl. ¶¶ 91, 98, 105.) These conclusory allegations fail to specify any emotional distress, much less severe emotional distress. Slue v. New York Univ. Med. Ctr., 409 F. Supp. 2d 349, 372 (S.D.N.Y. 2006) (observing that "vague assertions are insufficient to amount to severe emotional distress" and dismissing claim because plaintiff offered "no concrete evidence regarding physical or behavioral symptoms of such distress"); Gilewicz v. Buffalo Gen. Psychiatric (SIC) Unit, 118 A.D.3d 1298, 1300 (4th Dep't 2014) ("[T]he amended complaint

does not adequately allege that plaintiff suffered severe emotional distress because of defendants' conduct.  Indeed, plaintiff alleged in conclusory fashion only that defendants intentionally caused the plaintiff . . . emotional distress.") (internal quotations omitted).

VII.  <u>Civil Conspiracy</u>

Finally, Dr. Osuagwu concedes that his civil conspiracy claim must be dismissed if his independent tort claims fail.  (Pl's Opp'n Br. 20).  New York does not recognize a substantive tort of conspiracy.  <u>Grove Press, Inc. v. Angleton</u>, 649 F.2d 121, 123 (2d Cir. 1981) ("Under New York law, conspiracy, per se, is not a tort.") (citing cases); <u>see also</u> <u>Alexander & Alexander of New York, Inc. v. Fritzen</u>, 68 N.Y.2d 968, 969 (1986).  Rather, to succeed on a civil conspiracy claim, a plaintiff must allege a primary tort and four additional elements.  <u>Chrysler Capital Corp. v. Century Power Corp.</u>, 778 F. Supp. 1260, 1267 (S.D.N.Y. 1991).  Dr. Osuagwu's failure to plead a primary tort warrants dismissal of this claim.

CONCLUSION

For the foregoing reasons, GRMC's motion to dismiss Dr. Osuagwu's complaint (Dkt. No. 19) is GRANTED.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated:  New York, New York
        September 9, 2016